# SUPREME JUDICIAL COURT,

IN THE

## COUNTY OF PENOBSCOT,

### ARGUED AT JUNE TERM, 1842.

*Mem.* — Twenty-eight cases argued at this term were published in the last volume.

---

## SUMNER T. BASFORD *versus* CHARLES P. BROWN.

Where a paper, by which " *the signers of this do agree to join and subscribe our equal proportion of the expenses attending a dancing school, to be held at H. in D. to commence as soon as the majority of the school may think proper,*" was signed by the plaintiff and defendant, and by several others; and where it appeared that the school had afterwards been kept by a person employed by the plaintiff and two others, and that the plaintiff had paid more than his own proportion thereof, and that the defendant had paid nothing; and that the defendant had attended the school a part of the time, but had done no act to confer any agency on the plaintiff, or had knowledge that any had been assumed, or any liabilities incurred by him; it was held, that the action could not be supported.

ASSUMPSIT on an agreement, with the common money counts. The agreement was in these words. "Dancing School. We the signers of this do agree to join and subscribe our equal proportion of the expenses attending a dancing school, to be held in the Hall at R.. D. Crocker's Hotel at Dixmont corner, to commence as soon as the majority of the school may think proper." There was no date, and it was signed by twenty-six persons, of whom the plaintiff and defendant were two. Against the names of two of the signers was written the word "excused"; there was no writing against the name of the de-

VOL. IX.          2

fendant; and against the name of each of the others was written the word "paid." The whole amount paid, as appeared by the paper, was fifty-two dollars, but it did not appear on the paper, or by the testimony, by whom it was received. On the back of the paper was a memorandum, that J. W. Harris, S. T. Basford and S. D. Twitchell were chosen managers on Nov. 21, 1840; and also, that the school commenced under the instruction of B. C. Leavitt on Dec. 9, 1840.

To support his action, the plaintiff called B. C. Leavitt, who testified that he· kept a dancing school in Crocker's Hall at Dixmont corner, in the winter of 1840 ; that he made his contract with Basford, Harris, and Twitchell, and had nothing to do with the subscription paper ; that they attended the school, and that the defendant attended as a scholar, two or three evenings ; that he was always ready to·give him instruction ; and that Basford had paid him thirty-four dollars, and Harris had paid him thirty-two dollars.. Crocker testified, that Harris paid him eleven dollars, and Basford fourteen dollars. A witness testified, that the defendant said to him, that he would sign the paper if witness would ; that the witness replied that he could not attend ; and that Brown said that he too should not be able to be there much, but would sign to help the school.

The counsel for the defendant objected, that the action could not be maintained, because the paper set forth no contract on which the defendant was liable, and there was no proof to support the money counts.

The presiding Judge ruled that the action could not be maintained by the plaintiff alone, but the suit, if any, must be brought in the name of all the signers against the defendant ; and thereupon the plaintiff submitted to a nonsuit, and filed exceptions to the ruling of the Judge.

*J. Appleton*, for the plaintiff, in a written argument, contended that the contract declared on is binding on the parties.

When one subscribes, with others, a sum of money to carry on some common project, lawful in itself, and money is advanced upon the faith of such subscription, an action for money

paid may be maintained by him against a subscriber for the amount of his subscription, or such proportion of it as may be equal to his proportion of the expense incurred. *Bryant* v. *Holland*, 5 Pick. 228 ; 12 Mass. R. 190 ; 12 Pick. 543 ; 5 Ham. 58.

It has been decided that a promise " to take and fill up the number of shares set against our names," is a promise to pay assessments. 1 Fairf. 478.

Webster defines the verb " to subscribe" thus, " a promise to give by writing one's name," " to promise to give a certain sum by writing one's name on paper." To subscribe, means an agreement to pay. The contract means, we agree to join and subscribe, we jointly promise to pay. It is in reality a joint promise to pay, in which each is responsible for the other's performance of the subscription.

The plaintiff has paid money more than he has received, and an action in some form has accrued. The District Judge erred in ruling, that the action should be brought in the name of all the subscribers. The payments were not made from a joint fund ; and not being so, the action could not be jointly maintained. Where several sureties pay the debt of a principal, and there is no evidence of a partnership, nor joint interest, nor of a payment from a joint fund, the presumption of law is, that each paid his proportion of the same, and a joint action cannot be maintained. *Lombard* v. *Cobb*, 2 Shepl. 222, and cases cited.

The plaintiff, having paid the defendant's subscription, has a right to recover the same of him. *Goodall* v. *Wentworth*, 7 Shepl. 322.

*G. F. Shepley* argued in writing for the defendant.

The ruling of the presiding Judge in ordering a nonsuit was correct ; the case showing no ground upon which the action could have been maintained.

1. The paper introduced in evidence contains no proof of any contract. There is no mutuality ; no parties ; no valuable consideration. The promise of one is not so connected with the promise of the other as to afford any mutual consideration.

*Phillip's Limerick Academy* v. *Davis,* 11 Mass. R. 114; *New Bedford Turnp. Corp.* v. *Adams,* 8 Mass. R. 138; *Essex Turnp. Corp.* v. *Collins,* 8 Mass. R. 292.

2. This is not a contract to *pay,* but only to *subscribe.* Adopting the plaintiff's definition of the word subscribe, this is an agreement to "*promise* to *give* a certain sum by writing one's name." Now a "promise to GIVE," being without consideration, and insufficient to support an action, what must be *an agreement to promise to* GIVE? Yet this is the plaintiff's construction. He would read the paper thus: — "We the signers of this do agree to promise to GIVE."

3. There is no contract between the *parties to this suit.* If each subscriber is liable, he must be liable to all others jointly, or to the instructor; not to a separate action from each one of the other subscribers.

4. The payment, if any, by the plaintiff was voluntary. He was not requested or authorized to pay by the defendant, nor was he *liable.* No implied assumpsit is raised, where one pays the debt of another without being requested, or being liable; and *a fortiori,* where it is against his will.

5. The case does not find that the defendant paid any thing for the plaintiff, or that he paid the plaintiff's subscription; or paid any thing more than he received from the other subscribers. It appears that the plaintiff and Harris, who were two of the managers, paid certain moneys from the receipts of the subscription to Leavitt and Crocker; but there is no evidence tending to show that the plaintiff paid any more than his share; or that he paid any thing for the defendant. There is precisely the same evidence with regard to Harris, that there is with regard to the plaintiff. Harris has as much right of action upon the evidence as the plaintiff.

The opinion of the Court was drawn up by

TENNEY J. — This action cannot be maintained. The original subscription of the plaintiff, defendant, and others, was undoubtedly for carrying into execution an object desirable to them and lawful in itself. But if it be a promise to pay, it is

one made to no particular person and founded upon no valuable consideration. It contains no authority in any one to act for the subscribers in furtherance of their common design. The report of the case shows, that the plaintiff and two others made contracts with the master and paid him money and also paid other bills for expenses incurred in carrying on the school. But no agency is found to have been conferred upon him, or any authority given to make contracts. The defendant did sometimes attend the school, but it does not appear, that he had knowledge, that the plaintiff had assumed any liabilities, if in fact any were assumed by him, in behalf of the subscribers; and such knowledge cannot be inferred from any thing in the case before us.

The authorities referred to by the plaintiff's counsel, as analagous to the one at bar, were those wherein the defendants had conferred on the plaintiffs an agency, or had distinctly recognized in them a power to act, in carrying into effect the purposes contemplated in the subscription papers. This case exhibits no such facts.

Assuming that the subscribers, including the defendant, had authorized the plaintiff and two others to make all the engagements, necessary to carry into execution the object expressed in the paper, there is no evidence, that the plaintiff has made advances for the defendant. He has paid a sum much less than that already received on the subscription paper, and there is nothing on which we can found the presumption, that the money paid by him did not all arise from those receipts. He and Harris have each paid an equal sum, and together more than that paid by the subscribers; but how can we say that the plaintiff and not Harris has advanced the sum, which has not been obtained on the paper? Harris has the same right of action as the plaintiff has, and we do not see how a judgment in this action against the defendant can bar one in the name of Harris.

*The nonsuit confirmed.*